UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RIGOBERTO SARMIENTO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRESH HARVEST, INC., et al.,<br><br>Defendants. | Case No. 20-cv-07974-BLF<br><br>**ORDER GRANTING PLAINTIFF GUSTAVO LUEVANO-VACA'S MOTION TO DISMISS DEFENDANTS FRESH HARVEST, INC. AND SMD LOGISTICS, INC.'S COUNTERCLAIM WITH PREJUDICE**<br><br>[Re: ECF No. 66] |

Before the Court is Plaintiff Gustavo Luevano-Vaca's Rule 12(b)(6) motion to dismiss Defendants Fresh Harvest, Inc. and SMD Logistics, Inc.'s (collectively, "Fresh Harvest") counterclaim for breach of a December 31, 2020 settlement agreement ("Settlement Agreement"). The underlying action arises out of alleged violations of federal and California state employment laws and regulations by Fresh Harvest and Defendants Fresh Foods, Inc. and Rava Ranches, Inc. related to their employment of truck drivers through the H-2A visa program. Luevano-Vaca moves to dismiss Fresh Harvest's breach of contract counterclaim on the basis that the Settlement Agreement is void as contrary to public policy under 29 C.F.R. § 501.5 of the H-2A regulations. Luevano-Vaca argues that 29 C.F.R. § 501.5 prohibits waiver of an H-2A worker's rights under the H-2A regulations outside of specific circumstances, and none of these circumstances applied to the Settlement Agreement.

The Court hereby GRANTS Luevano-Vaca's motion to dismiss Fresh Harvest's counterclaim WITHOUT LEAVE TO AMEND.

**I. BACKGROUND**

On November 12, 2020, Plaintiff Rigoberto Sarmiento filed a class action complaint against

Defendants asserting employees' right to receive prevailing wages and equal pay under their employment agreement, the H-2A visa program, and California state employment law. Complaint, ECF No. 1. Luevano-Vaca was added as a named class representative in the First Amended Complaint, which was filed on June 11, 2021. First Amended Complaint ("FAC"), ECF No. 53. Luevano-Vaca alleges that he was an H-2A visa worker for Defendants. *Id.* ¶¶ 3, 9. In response, Fresh Harvest answered and counterclaimed against Luevano-Vaca for breach of contract based on his bringing claims against Fresh Harvest in violation of a settlement agreement entered into between Luevano-Vaca and Fresh Harvest. Answer and Counterclaim, ECF No. 59.

Fresh Harvest alleges that Luevano-Vaca and Fresh Harvest executed the Settlement Agreement on December 31, 2020. Counterclaim, ECF No. 59 ¶¶ 6, 8; *id.*, Exs. A-B. Fresh Harvest admits that Luevano-Vaca worked for Defendant Fresh Harvest, Inc. pursuant to an H-2A visa in 2019 and 2020. Answer, ECF No. 59 ¶ 9. The Settlement Agreement was executed after the filing of Sarmiento's class action, but before Luevano-Vaca joined this lawsuit as a named Plaintiff. Counterclaim, ECF No. 59 ¶ 9.

In the Settlement Agreement, Luevano-Vaca agreed to settle "any and all claims arising out of [his] employment with [Fresh Harvest]." *Id.* ¶ 6. Luevano-Vaca specifically released any claims alleged in Sarmiento's class action. *Id.* ¶ 10. Further, Luevano-Vaca released claims against Fresh Harvest and any affiliated companies, *id.* ¶ 7, which Fresh Harvest argues included Defendant SMD Logistics, Inc. Opposition, ECF No. 69 at 14. Luevano-Vaca acknowledged that he was in receipt of a disclosure statement regarding Sarmiento's class action and that he had an adequate opportunity to seek the advice of counsel. Counterclaim, ECF No. 59 ¶ 13; *see id.*, Ex. C. Further, Luevano-Vaca agreed to the following provision:

> In the event of a breach of this Agreement by Employee, any and all consideration paid hereunder shall become immediately due and payable by Employee to Company. For purposes of this paragraph, the filing of any action or proceedings described in paragraph 8 or a breach of Employee's obligations in paragraphs 1 or 6 shall conclusively be a breach of this Agreement.

Counterclaim, ECF No. 59 ¶ 12. Defendant Fresh Harvest, Inc. agreed to pay Luevano-Vaca

1  $2,644.80 pursuant to the Settlement Agreement. *Id.*, Ex. A ¶ 1. Fresh Harvest alleges that
2  Luevano-Vaca breached the Settlement Agreement by joining the present action and asserting
3  claims against Fresh Harvest. Counterclaim, ECF No. 59 ¶¶ 15-20.

On July 16, 2021, Luevano-Vaca filed his Motion to Dismiss Fresh Harvest's breach of contract counterclaim. *See* Motion, ECF No. 66. On July 30, 2021, Fresh Harvest filed an Opposition. *See* Opposition, ECF No. 69. On August 6, 2021, Luevano-Vaca filed a Reply. *See* Reply, ECF No. 79. On October 7, 2021, the Court held a hearing on Luevano-Vaca's Motion.

In his Motion, Luevano-Vaca moves to dismiss Fresh Harvest's counterclaim on the basis that the Settlement Agreement is void because it violates the express language of the H-2A regulations' waiver of rights prohibition at 29 C.F.R. § 501.5 as contrary to public policy. Luevano-Vaca argues that the Settlement Agreement does not meet either of the exceptions provided in 29 C.F.R. § 501.5 because it was neither (1) supervised via the Department of Labor in an enforcement action or (2) in settlement of private litigation between Luevano-Vaca and Fresh Harvest, since Luevano-Vaca was not a party to this litigation at the time. In their Opposition, Fresh Harvest argues that 29 C.F.R. § 501.5 does not invalidate the Settlement Agreement. Fresh Harvest argues that the Settlement Agreement is a valid resolution of Luevano-Vaca's employment claims related to Fresh Harvest's past conduct and the release of liability is compliant with § 501.5 because it was "in settlement of private litigation."

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In this inquiry, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint is not required to contain detailed factual allegations, it "must contain sufficient

3

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the counterclaim and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III.   DISCUSSION

#### A.   H-2A Visa Program

At issue in this case are the requirements imposed on employers who participate in the H-2A visa program, including wage requirements. Congress created the H-2A visa program to allow employers to hire non-citizens to fill temporary agricultural jobs pursuant to certain regulatory requirements. *See* 8 U.S.C. § 1188. A petition to hire an H-2A employee requires a certification that "(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition" and "(B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). The Department of Labor ("DOL") is "authorized to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of

4

1  contractual obligations, as may be necessary to assure employer compliance with terms and
2  conditions of employment" under the H-2A visa program. 8 U.S.C. § 1188(g)(2). The DOL has
3  promulgated regulations implementing the H-2A visa program at 20 C.F.R. §§ 655.100-185 and
4  29 C.F.R. §§ 501.0-501.47.

Pursuant to the DOL's regulations, employers must file job orders containing the "material terms and conditions of employment," 20 C.F.R. § 655.103(b), with the DOL that comply with certain requirements, including "minimum benefit, wage, and working condition provisions[.]" 20 C.F.R. § 655.122(c). "In the absence of a separate written work contract incorporating the required terms and conditions of employment, agreed to by both the employer and the worker, the work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 28 CFR part 501, or [20 C.F.R. Part 655, Subpart B]." 20 C.F.R. § 655.103(b). Courts have found that employees have contractual rights under the job order requirements. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 900 (9th Cir. 2013); *Frederick Cty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265, 1268 (D.C. Cir. 1992). The regulations also require H-2A employers to make certain assurances, including that they will "comply with all applicable Federal, State and local laws and regulations, including health and safety laws." 20 C.F.R. § 655.135(e).

The regulations in 29 C.F.R. Part 501 "cover the enforcement of all contractual obligations, including requirements under 8 U.S.C. 1188 and 20 CFR part 655, subpart B applicable to the employment of H-2A workers and workers in corresponding employment[.]" 29 C.F.R. § 501.0. These regulations include a provision prohibiting the waiver of an employee's rights under the H-2A regulations at 29 C.F.R. § 501.5.

**B.  Interpretation of 29 C.F.R § 501.5**

The primary dispute between the parties is the interpretation of the waiver of rights prohibition in the H-2A regulations at 29 C.F.R. § 501.5. This regulation prohibits any person from seeking to have H-2A employees waive their rights under the H-2A regulations outside of certain circumstances:

> § 501.5 Waiver of rights prohibited.

5

> A person may not seek to have an H-2A worker, a worker in corresponding employment, or a U.S. worker improperly rejected for employment or improperly laid off or displaced waive any rights conferred under 8 U.S.C. 1188, 20 CFR part 655, subpart B, or the regulations in these parts. Any agreement by an employee purporting to waive or modify any rights given to said person under these provisions shall be void as contrary to public policy except as follows:
>
> (a) Waivers or modifications of rights or obligations hereunder in favor of the Secretary shall be valid for purposes of enforcement; and
>
> (b) Agreements in settlement of private litigation are permitted.

29 C.F.R. § 501.5. Luevano-Vaca argues § 501.5 is clear on its face and allows only two narrow exceptions to the waiver prohibition, which are not present here. Motion, ECF No. 66 at 7-8. Fresh Harvest argues that § 501.5 should be interpreted to apply broadly to past conduct that could result in private litigation if not resolved. Opposition, ECF No. 69 at 10-11.

"[W]here the language of an enactment is clear or, in modern parlance, plain, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended." *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)) (alterations omitted). "[T]he plain meaning of a regulation governs and deference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous." *Wards Cove Packing Corp. v. Nat'l. Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir. 2002).

The Court agrees with Luevano-Vaca. 29 C.F.R. § 501.5 is clear on its face that "[a]ny agreement by an employee purporting to waive or modify any rights given to said person under these provisions shall be void as contrary to public policy," unless it meets one of two exceptions. 29 C.F.R. § 501.5. To meet the first exception, an agreement must be supervised by the Department of Labor, which neither party considers applicable here. 29 C.F.R. § 501.5(a). To meet the second exception, an agreement must be "in settlement of private litigation." 29 C.F.R. § 501.5(b). For an agreement to be "in settlement of private litigation," it seems clear that there must be a lawsuit to settle. Accordingly, for an agreement to qualify for the second exception to the H-2A waiver prohibition, the Court finds that it must be between parties to active litigation. Fresh Harvest can point to no cases supporting its broad interpretation of "in settlement of private litigation." Instead,

6

Fresh Harvest argues that settlement of any dispute that could mature into a lawsuit if not resolved would qualify. But again, that expansion of § 501.5 is untethered to the plain meaning of the regulation.

As a separate argument, Fresh Harvest asserts that § 501.5 allows waiver of past employer conduct, but not prospective rights. But nothing in § 501.5 supports that dichotomy. The regulation states that "[a]ny agreement by an employee purporting to waive or modify any rights given to said person under these provisions shall be void as contrary to public policy," unless one of the exceptions is met. 29 C.F.R. § 501.5. The broad language "any rights" undermines Fresh Harvest's interpretation. Since the plain meaning of 29 C.F.R. § 501.5(b) indicates that active litigation is required to meet the exception, and there is no suggestion of any "absurd or impracticable consequences" of this requirement, the Court interprets the regulation accordingly. *Dumont*, 581 F.3d at 1111.

The Court's interpretation of 29 C.F.R. § 501.5(b) is consistent with the public policy behind the H-2A regulations Congress has identified. Under the Immigration and Nationality Act, Congress authorized the Secretary of Labor to take actions "to assure employer compliance with terms and conditions of employment" under the H-2A program. 8 U.S.C. § 1188(g)(2). Voiding an H-2A worker's release of rights outside of narrow circumstances "assure[s] employer compliance with terms and conditions of employment," because it limits employers' ability to skirt the requirements of the H-2A regulations through private contract. *Id.* Further, the Court's interpretation is consistent with the DOL's interpretation of 29 C.F.R. § 501.5. In response to an invitation by an agricultural employer seeking to clarify that the regulation "does not preclude offering a settlement, proposing a waiver or general release, or informally resolving disputes in the workplace," the DOL stated that "agreements to settle private litigation are not prohibited. In other contexts employees may not waive statutory or regulatory rights." Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77,196 (Dec. 18, 2008). This supports that 29 C.F.R. § 501.5(b) is a narrow exception to the waiver prohibition.

Accordingly, the Court interprets the exception to the H-2A waiver prohibition at 29 C.F.R.

§ 501.5(b) to apply only when an agreement is in settlement of active private litigation.

### 1. FLSA and FMLA Waiver Prohibitions

In support of their interpretations of 29 C.F.R. § 501.5, Luevano-Vaca and Fresh Harvest disagree as to whether it is more analogous to the waiver prohibition for the Fair Labor Standards Act ("FLSA") or the Family and Medical Leave Act ("FMLA").

Luevano-Vaca analogizes 29 C.F.R. § 501.5 to the FLSA waiver prohibition. Courts have found that a settlement of FLSA claims must be supervised by the DOL or a court. *See Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); Motion, ECF No. 66 at 8-9. Luevano-Vaca points out that courts have interpreted the FLSA to require DOL or court-supervised settlement because waiver of FLSA rights would thwart the legislative policy of the FLSA. Motion, ECF No. 66 at 9 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945).) Luevano-Vaca argues that the same reasoning applies to waivers of H-2A rights. *Id.* In response, Fresh Harvest cites DOL statements that "[t]he supervised settlement practice … is unique to the FLSA" and "[t]he judicial prohibition against private settlements under the FLSA is based on policy considerations unique to the FLSA." Opposition, ECF No. 69 at 11-12 (citing The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67,987 (Nov. 17, 2008).) On reply, Luevano-Vaca argues these "unique" policy considerations also apply to the H-2A program, because it is designed to protect low-wage workers like the FLSA. Reply, ECF No. 79 at 8-10. The Court agrees with Fresh Harvest. The DOL stated that the supervised settlement practice is "unique" to the FLSA. 73 Fed. Reg. 67,987 (Nov. 17, 2008). Further, interpreting the H-2A waiver prohibition to require DOL or court-supervised settlement like the FLSA would contradict the plain language of 29 C.F.R. § 501.5. *Wards Cove*, 307 F.3d at 1219. 29 C.F.R. § 501.5(b) only requires an agreement to be "in settlement of private litigation"—it does not require court-approved settlement.

On the opposite end of the spectrum, Fresh Harvest analogizes 29 C.F.R. § 501.5 to the FMLA waiver prohibition. Fresh Harvest argues that the DOL has interpreted the H-2A waiver prohibition to be "similar" to the FMLA waiver prohibition, which explicitly applies only to waivers of "prospective" rights. 29 C.F.R. § 825.220(d); *see* Opposition, ECF No. 69 at 10-11 (citing Temporary Non-Agricultural Employment of H-2B Aliens in the United States, 77 Fed. Reg. 10,109

8

1  (Feb. 21, 2012).) In response, Luevano-Vaca argues that the only similarity the DOL noted between
2  the FMLA and H-2A regulations was the fact of a waiver restriction, not the precise contours of that
3  restriction. Reply, ECF No. 79 at 5. The Court agrees with Luevano-Vaca. The DOL stated that a
4  proposed waiver of rights prohibition for the H-2B regulations was "consistent with similar
5  prohibitions against waiver of rights under other laws, such as the Family and Medical Leave Act,
6  see 29 CFR 825.220(d), and the H-2A program, see 29 CFR 501.5." 77 Fed. Reg. 10,109 (Feb. 21,
7  2012). It is not reasonable to infer from the DOL's general statement that the FMLA's "prospective"
8  rights language should be imported into the H-2A waiver prohibition. If the DOL considered the
9  H-2A waiver prohibition to apply only to "prospective" rights like the FMLA waiver prohibition,
10 the DOL would have said so or sought amendment to 29 C.F.R. § 501.5 to include that language.
11 *See* Reply, ECF No. 79 at 3-6 (recounting regulatory history of FMLA, H-2A, and H-2B waiver
12 prohibitions).
13     Accordingly, the Court finds that neither the FLSA nor the FMLA are instructive for
14 interpreting the H-2A waiver prohibition.

### 2. Public Policy

16     The parties further disagree about whether there is public policy support for limiting H-2A
17 workers' freedom to contract to narrow circumstances like when active litigation is pending. Fresh
18 Harvest argues that without a court-approved settlement requirement, it does not make sense to
19 allow H-2A workers to settle claims only after they have filed a lawsuit, because "[t]here is nothing
20 magical about the filing of a lawsuit." Opposition, ECF No. 69 at 5. In response, Luevano-Vaca
21 argues that an active litigation requirement makes sense, because a court will be aware of any
22 settlement and the worker will likely be represented by counsel. Reply, ECF No. 79 at 8. The Court
23 agrees with Luevano-Vaca. Compliance with the Federal Rules of Civil Procedure and the
24 involvement of a court are meaningful guardrails to safeguard an H-2A worker's rights.
25     In support of the public policy of limiting broad waivers of H-2A rights, Luevano-Vaca
26 points to several cases he argues show that courts have cast doubt on the possibility that migrant
27 workers are able to contract freely with respect to their employment rights. Motion, ECF No. 66 at
28 10-12. Luevano-Vaca points to *Recinos-Recinos v. Express Forestry, Inc.*, No. CIV.A. 05-1355,

2006 WL 197030 (E.D. La. Jan. 24, 2006). In that case, the court found the relationship between "indigent H-2B seasonal employees" and their employers was "inherently coercive" where the workers depended on their employers for "lucrative planting work in the United States annually." *Id.* at \*\*11-12. Fresh Harvest argues that *Recinos-Recinos* is distinguishable because it did not pertain to (1) settlement agreements with putative class members in a wage and hour case or (2) noncoercive circumstances like those surrounding the Settlement Agreement. Opposition, ECF No. 69 at 12. The Court does not need to rule on the coercion issue to acknowledge that *Recinos-Recinos* shows that courts have recognized seasonal agricultural workers' unfettered freedom to contract as a potential risk to their employment rights.

The Court finds Luevano-Vaca's other cases less relevant. *Magana-Muñoz* hinges on a "side" arbitration agreement violating the requirement that H-2A job orders contain all material terms of a worker's employment, which is not at issue here. *Magana-Muñoz v. West Coast Berry Farms, LLC*, No. 5:20-cv-02087-EJD, 2020 U.S. Dist. LEXIS 121870, at \*17 (N.D. Cal. July 9, 2020). And Luevano-Vaca's *Sun Valley Orchards* case pertains to falsified separation agreements, so it has no clear bearing on the present case. *In the Matter of Administrator, Wage & Hour Div., Dep't of Labor v. Sun Valley Orchards*, 2021 DOL Ad. Rev. Bd. LEXIS 41, at \*10.

Accordingly, the Court finds that Luevano-Vaca's interpretation of the H-2A waiver of rights prohibition is consistent with the general public policy of protecting the employment rights of H-2A and other seasonal workers.

### 3. Putative Class Members

Fresh Harvest argues that even if active litigation is required to meet 29 C.F.R. § 501.5(b), active litigation between Luevano-Vaca and Fresh Harvest was pending when the Settlement Agreement was executed, because Luevano-Vaca was a putative class member in the current action. Opposition, ECF No. 69 at 5-6, 9-10. Fresh Harvest points to the *Pick Up Stix* case and its progeny as support for the proposition that class action defendants are permitted to settle claims with putative class members before class certification. *Id.* at 9-10 (citing *Chindarah v. Pick Up Stix, Inc.*, 171 Cal.App.4th 796 (2009)). In response, Luevano-Vaca argues that courts do not consider a putative class member to be a party to a class action for various purposes, including jurisdiction,

10

1  venue, compulsory counterclaims, and discovery, prior to class certification. Reply, ECF No. 79 at 6-7.

The Court agrees with Luevano-Vaca. There is no active "private litigation" pending between a defendant to a class action and a putative class member prior to class certification. In a variety of procedural circumstances, courts have declined to find unnamed putative class members to be parties to a class action. *See, e.g., Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at \*\*5-6 (N.D. Cal. Jan. 27, 2014) (for venue purposes); *Carranza v. Terminix Int'l Co. Ltd. P'ship*, 529 F.Supp.3d 1139, 1145-46 (S.D. Cal. 2021) (for jurisdictional purposes); *Slack v. Int'l Union of Operating Engineers*, No. C-13-5001 EMC, 2013 WL 12218461, at \*1 (N.D. Cal. Dec. 3, 2013) (for standing to bring a Rule 11 motion). Further, the benefits of active litigation discussed above—likelihood of attorney representation and court awareness of settlement—do not apply to a putative class member before class certification. A putative class member also does not have the protection of certain ethical obligations that apply to a party to litigation. *See* Cal. Rule of Prof. Cond. 4.2(a). Further, the Court finds that the *Pick Up Stix* case Fresh Harvest cites is inapposite. In *Pick Up Stix*, the waiver of rights prohibition at issue was Section 206.5(a) of the California Labor Code, 171 Cal.App.4th at 798-99, which provides that "[a]n employer shall not require the execution of a release of a claim or right on account of wages due…unless payment of those wages has been made." Cal. Lab. C. § 206.5. The court found that under that provision, a putative class member could settle a bona fide dispute over past overtime wages where "the releases [did not] condition the payment of wages concededly due on their executions." *Pick Up Stix*, 171 Cal.App.4th at 803. In the present case, 29 C.F.R. § 501.5 is the relevant waiver of rights prohibition. An H-2A employee's release of claims can violate 29 C.F.R. § 501.5 even if the employer did not "require the execution of a release of a claim or right on account of wages due." Cal. Lab. C. § 206.5. Further, 29 C.F.R. § 501.5(b) only permits waiver of rights under the H-2A regulations "in settlement of private litigation." 29 C.F.R. § 501.5(b). The waiver of rights prohibition at issue in *Pick Up Stix* had no such requirement. Accordingly, the Court finds that *Pick Up Stix* does not apply here—different waiver prohibitions are at issue.

The Court finds that Luevano-Vaca's status as a putative class member to this case did not

United States District Court
Northern District of California

Case 5:20-cv-07974-BLF   Document 147   Filed 12/01/21   Page 12 of 16

render the Settlement Agreement "in settlement of private litigation" under 29 C.F.R. § 501.5(b).

C.   **Elkhorn Packing**

On November 3, 2021, the Ninth Circuit filed its decision in *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, No. 19-17311, --- F.4th ----, 2021 WL 5099986 (9th Cir. 2021). In *Elkhorn Packing*, the Ninth Circuit found that an arbitration agreement between an H-2A employee and his employer that was signed after he had made the journey from Mexico to California was not signed under economic duress or undue influence. *Id.* at \*\*2-3, 11. On November 12, 2021, the Court granted Fresh Harvest's request for supplemental briefing "limited only to the effect, if any, of the *Elkhorn Packing* decision on Luevano-Vaca's motion." *See* Order Granting Fresh Harvest's Administrative Motion, ECF No. 137.

In its supplemental brief, Fresh Harvest argues that the *Elkhorn Packing* decision undermines Luevano-Vaca's motion to dismiss because (1) it rejects Luevano-Vaca's claim that H-2A workers' economic dependence on U.S. employers is an "inherently coercive relationship," (2) it found enforceable an agreement waiving an H-2A worker's rights, and (3) it undermined the court's finding in the *Magana-Muñoz* case. Fresh Harvest's Supplemental Brief, ECF No. 138 at 1-2 (citing *Magana-Muñoz*, 2020 U.S. Dist. LEXIS 121870, at \*9.)

In response, Luevano-Vaca argues in his supplemental brief that *Elkhorn Packing* has no bearing on his Motion to Dismiss because (1) *Elkhorn Packing* pertained to economic duress and undue influence, which is not the basis for his Motion, (2) the issue of whether 29 C.F.R. § 501.5 voided the arbitration agreement was not raised in *Elkhorn Packing*, (3) the issue of whether the arbitration agreement was a "material term and condition of Plaintiffs' employment" was also not raised, which was the basis of the *Magana-Muñoz* decision, and (4) the Ninth Circuit's finding did not undermine the general policy of protecting the rights of vulnerable agricultural workers under the H-2A regulations. Luevano-Vaca's Supplemental Brief, ECF No. 140 at 1-2.[1]

---

[1] The parties raise additional arguments in their supplemental briefs regarding recovery of the amounts paid to H-2A workers in settlement. *See* Fresh Harvest's Supplemental Brief, ECF No. 138 at 2-3; Luevano-Vaca's Supplemental Brief, ECF No. 140 at 3. That issue is not before the

The Court agrees with Luevano-Vaca that the *Elkhorn Packing* decision does not impact the outcome of this Motion to Dismiss. Fresh Harvest concedes that *Elkhorn Packing* "did not address 29 C.F.R. § 501.5," and the Court finds baseless Fresh Harvest's assertion that "it is doubtful that the Ninth Circuit's analysis or holding would have been any different" if the Ninth Circuit had considered 29 C.F.R. § 501.5. Fresh Harvest's Supplemental Brief, ECF No. 138 at 1-2. Further, the Court's holding regarding Luevano-Vaca's Motion is not based on the H-2A employer-employee relationship being an "inherently coercive relationship." The Court agrees with Luevano-Vaca that *Elkhorn Packing* does not alter the Court's interpretation and application of 29 C.F.R. § 501.5 in this case. And the Court's decision here does not rely on the *Magana-Muñoz* case, so Fresh Harvest's arguments about that case are irrelevant.

### D. Validity of the Settlement Agreement

In light of the Court's interpretation of 29 C.F.R. § 501.5, the Settlement Agreement is invalid because it does not fall under either exception to the H-2A waiver prohibition.

Fresh Harvest further argues that even if the Settlement Agreement is void as to the waiver of federal claims, it has continued validity as to the state law claims asserted by Luevano-Vaca. Fresh Harvest argues that the Court should deny Luevano-Vaca's Motion to Dismiss as to Luevano-Vaca's state law claims, because 29 C.F.R. § 501.5 only pertains to federal H-2A claims. Opposition, ECF No. 69 at 14-15. In response, Luevano-Vaca argues that 29 C.F.R. § 501.5 voids the Settlement Agreement in its entirety, because (1) Luevano-Vaca's state law claims are nonwaivable rights under the H-2A regulations and (2) a contract contrary to public policy is completely void under California law. Reply, ECF No. 79 at 10-11.

The existence of a contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. "Contracts that are contrary to express statutes or to the policy of express statutes ... are illegal contracts." *Green v. Mt. Diablo Hosp. Dist.*, 207 Cal.App.3d 63, 73 (1989) (citing Cal. Civ. Code § 1667(1),

---

Court at this time.

(2).) "Any such illegality voids the entire contract." *Id.* at 73. Under California law, contracts are extinguished by rescission. *Duffens v. Valenti*, 161 Cal.App.4th 434, 447 (2008) (citations omitted). Courts sever a partially illegal contract where "the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side." *Keene v. Harling*, 61 Cal.2d 318, 321 (1964). "[I]f the court is unable to distinguish between the lawful part of the agreement and the unlawful part, the illegality taints the entire contract, and the entire transaction is illegal and unenforceable." *Id*.

The Court finds that 29 C.F.R. § 501.5 voids the Settlement Agreement in its entirety because it violates the express terms of § 501.5 and it is "contrary to public policy." 29 C.F.R. § 501.5. The Court agrees with Luevano-Vaca that his waiver of state law claims against Fresh Harvest pursuant to the Settlement Agreement was an unlawful waiver of rights conferred under the H-2A regulations. The H-2A regulation 20 C.F.R. § 655.135(e) requires as part of the "[a]ssurances and obligations of H-2A employers" that "[a]n employer seeking to employ H-2A workers must agree" that it will "comply with all applicable Federal, State and local laws and regulations, including health and safety laws." 20 C.F.R. § 655.135(e). The H-2A regulations' waiver of rights prohibition at 29 C.F.R. § 501.5 applies to "[a]ny agreement by an employee purporting to waive or modify any rights given to said person," including under 20 C.F.R. Part 655, Subpart B, which includes 20 C.F.R. § 655.135. 29 C.F.R. § 501.5. Furthermore, the H-2A regulations require that an H-2A employee's "work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 28 CFR part 501, or [20 C.F.R. Part 655, Subpart B]." 20 C.F.R. § 655.103(b). The Ninth Circuit has treated H-2A job orders as valid work contracts. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899-900 (9th Cir. 2013). The Court finds that given the incorporation of 20 C.F.R. § 655.135 into 29 C.F.R. § 501.5, as well as the incorporation of 20 C.F.R. § 655.135 into an H-2A worker's job order rights, the H-2A waiver prohibition applies to a worker's right to bring state law claims against his or her employer. Accordingly, Luevano-Vaca's waiver of any state law claims against Fresh Harvest in the Settlement Agreement was unlawful.

Even if the Settlement Agreement were only to constitute an improper release of rights as to

1  a subset of Luevano-Vaca's claims against Fresh Harvest, this is not a situation where the Court can
2  "reasonably relate the illegal consideration on one side to some specified or determinable portion of
3  the consideration on the other side." *See Keene*, 61 Cal.2d at 321; *see also Securitas Sec. Servs.*
4  *USA, Inc. v. Sup. Ct.*, 234 Cal.App.4th 1109, 1126 (2015) ("The…agreement, therefore, is not
5  divisible, but presents an all-or-nothing proposition[.]"). Fresh Harvest paid Luevano-Vaca a lump
6  sum of $2,644.80 in exchange for release of "any and all claims of any and every kind[.]"
7  Counterclaim, ECF No. 59, Ex. A ¶ 4. The Settlement Agreement between Luevano-Vaca and Fresh
8  Harvest is therefore void in its entirety as a matter of public policy.

9  Without adequately alleging the existence of a valid contract, Fresh Harvest cannot state a
10 claim for breach of contract.[2] *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011)
11 ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract,
12 (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the
13 resulting damages to the plaintiff.") (internal citations omitted). Accordingly, Luevano-Vaca's
14 motion to dismiss Fresh Harvest's breach of contract counterclaim is hereby GRANTED.

15 **E.   Leave to Amend**

16 Since the Court has found that the Settlement Agreement is void as a matter of law, the Court
17 finds that amendment of Fresh Harvest's breach of contract claim would be futile. *See Manzarek v.*
18 *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Rivera v. BAC Home Loans*
19 *Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386,
20 393 (9th Cir. 1996)). Accordingly, the Court DISMISSES Fresh Harvest's breach of contract claim
21 WITHOUT LEAVE TO AMEND.

---

[2] Fresh Harvest argues that "[e]ither Plaintiff's counsel was not aware of the settlement agreement, and therefore did not do FRCP 11 due diligence, or Plaintiff's counsel did know about the settlement agreement and failed to advise the Court of the fact he entered into a settlement agreement releasing his claims, which is also a violation of Rule 11." Opposition, ECF No. 69 at 6. Since the Court finds the Settlement Agreement is void, the Court finds that Fresh Harvest has no basis for a Rule 11 claim.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The December 31, 2020 settlement agreement between Luevano-Vaca and Defendant Fresh Harvest, Inc. is hereby VOID.

(2) Defendants Fresh Harvest, Inc.'s and SMD Logistics, Inc.'s counterclaim against Luevano-Vaca for breach of contract is hereby DISMISSED WITHOUT LEAVE TO AMEND.

Dated: December 1, 2021

BETH LABSON FREEMAN
United States District Judge