UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RIGOBERTO SARMIENTO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRESH HARVEST, INC.,, et al.,<br><br>Defendants. | Case No. 20-cv-07974-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**<br><br>[Re: ECF No. 178] |

Before the Court is Plaintiffs Rigoberto Sarmiento and Gustavo Luevano-Vaca's (collectively, "Plaintiffs") motion for protective order to limit Defendants Fresh Harvest, Inc. and SMD Logistics, Inc.'s (collectively, "Fresh Harvest") communications with Plaintiffs and putative class members in this pre-class certification wage and labor class action. Plaintiffs' motion is based on evidence of Fresh Harvest's prior communications with putative class members and Plaintiffs, including an incident on June 13, 2022 when Fresh Harvest allegedly sent a leader of a Mexican vigilante group to Plaintiff Luevano-Vaca's residence in Mexico. *See* Motion, ECF No. 178. Fresh Harvest opposes. *See* Opposition, ECF No. 190.

Based on the below reasoning, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

**I.    BACKGROUND**

Since the parties already know the facts of the case, the Court will limit its recitation of the procedural and factual background to a brief summary.

**A.    Procedural Background**

This is a California wage and hour case brought on behalf of foreign national agricultural workers who work seasonally in the United States pursuant to H-2A visas ("H-2A workers") and

domestic agricultural workers who are allegedly in "corresponding employment" with the H-2A workers ("domestic workers") under the H-2A regulations. The case was originally brought by a single Plaintiff—Mr. Sarmiento—who is a domestic worker. *See* Complaint, ECF No. 1. Mr. Luevano-Vaca—an H-2A worker—joined the case as a Plaintiff on June 11, 2021. *See* First Amended Complaint ("FAC"), ECF No. 53. Before Mr. Luevano-Vaca joined the case, he signed a release of claims against his prior employer Fresh Harvest. In its answer to the First Amended Complaint, Fresh Harvest counterclaimed for breach of contract based on Mr. Luevano-Vaca's suit against Fresh Harvest in breach of the release he had previously signed while a putative class member. *See* Fresh Harvest's Answer, ECF No. 59.

Plaintiffs moved to dismiss Fresh Harvest's counterclaim, arguing that the release Mr. Luevano-Vaca signed was void under H-2A regulation 29 C.F.R. § 501.5, which prohibits waiver of an H-2A worker's rights outside of certain situations, including in "[a]greements in settlement of private litigation." *See* 29 C.F.R. § 501.5(b). On December 1, 2021, the Court granted Plaintiffs' motion, finding that since Mr. Luevano-Vaca was only a putative class member at the time he signed the release of claims against Fresh Harvest, the agreement was not "in settlement of private litigation" and was void as a matter of public policy under 29 C.F.R. § 501.5 as a waiver of Mr. Luevano-Vaca's rights under the H-2A regulations. *See* Order, ECF No. 147.

B.   **Factual Background**

In this present motion, Plaintiffs submit evidence that on June 13, 2022, Mr. Luevano-Vaca was visited at his residence in the state of Baja California, Mexico, by a leader of a Mexican vigilante group[1] who had flown from Mexico City to offer Mr. Luevano-Vaca $8,000 to settle his claims against Fresh Harvest. *See, e.g.*, Luevano-Vaca Decl., ECF No. 178-1 ¶¶ 3–8; Lopez Zazueta Decl., ECF No. 178-2 ¶¶ 1–3. Plaintiffs submit evidence that the vigilante group leader put Mr. Luevano-Vaca in touch with a lawyer who spoke further with Mr. Luevano-Vaca about settling his claims. *See* Luevano-Vaca Decl., ECF No. 178-1 ¶¶ 9–12. Plaintiffs argue that the June 13, 2022 incident

---

[1] The Court declines to specify the name of the Mexican vigilante leader, since the Court previously sealed this information based on Fresh Harvest's contention that it could endanger Fresh Harvest if this information was publicly disclosed. *See* Order Granting Sealing Motions, ECF No. 193.

is in line with Fresh Harvest's prior conduct, which has included contacting putative class members to sign releases—in violation of the Court's December 1, 2021 order—that include provisions preventing the putative class members from serving as witnesses in the present case. *See, e.g.*, ECF Nos. 144-4, 144-12, 144-17, 144-18.

In response, Fresh Harvest submits evidence that the person who visited Mr. Luevano-Vaca's residence was a legal assistant—not a vigilante group leader—and he was sent by a Mexican attorney named Eduardo Baltazar to discuss a potential truck driving job for Harvest Tek de Mexico ("Harvest Tek")—an affiliate of Fresh Harvest. *See* Baltazar Decl., ECF No. 184-1 ¶¶ 2–8; Bernal Decl., ECF No. 184-1 ¶¶ 2–7. As to the releases Fresh Harvest has collected from putative class members, Fresh Harvest argues that the only releases Plaintiffs can point to were collected before the Court issued its December 1, 2021 order finding that such releases are void as a matter of public policy. *See* Opposition, ECF No. 190 at 12.

Based on the evidence of Fresh Harvest's contact with Plaintiffs and putative class members, Plaintiffs seek a protective order (1) prohibiting Fresh Harvest and its agents from communicating with Plaintiffs other than through counsel of record; (2) prohibiting Fresh Harvest and its agents from communicating with putative class members about waivers or releases of claims; and (3) prohibiting Fresh Harvest and its agents from communicating with putative class members about this litigation. *See* Proposed Order, ECF No. 191-2. Fresh Harvest opposes, arguing that any such protective order is unnecessary based on the evidence. *See* Opposition, ECF No. 184-2.

## II.   LEGAL STANDARD

Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Further, under Rule 23, courts may issue orders in class actions that "impose conditions on the representative parties or on intervenors" or "deal with similar procedural matters." *See* Fed. R. Civ. P. 23(d).

Because of the potential for abuse in a class action, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Since an

order limiting class communications involves "serious restraints on expression" under the First Amendment, courts should use "caution . . . in drafting such an order" and consider "whether the restraint is justified by a likelihood of serious abuses." *See id.* at 104. "Because of these potential problems, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *See id.* at 101–102.

**III.   DISCUSSION**

Plaintiffs seek limits on Fresh Harvest's communications with (1) Plaintiffs and (2) putative class members. The Court considers each issue in turn.

**A.   Communications with Plaintiffs**

Plaintiffs argue that the Court should prohibit communications between Fresh Harvest and Plaintiffs, because such communications violate California Rule of Professional Responsibility 4.2, which limits *ex parte* communications with represented parties. *See* Motion, ECF No. 178 at 6–7. Plaintiffs further argue that such a prohibition is particularly necessary given Fresh Harvest's use of coercive conduct, including sending a vigilante leader to Mr. Luevano-Vaca's house. *See id.* at 7. Additionally, Plaintiffs argue that regardless of the identity of the agent sent to Mr. Luevano-Vaca's house, a protective order prohibiting *ex parte* communications is necessary, since the evidence shows that the agent visited Mr. Luevano-Vaca's home—unannounced, uninvited, and to the dismay of Mr. Luevano-Vaca and his wife—to discuss the present lawsuit and a monetary settlement. *See* Reply, ECF No. 191 at 3–4 (citing, *e.g.*, Morton Reply Decl., ECF No. 191-1, Ex. D at 1, 5).

In response, Fresh Harvest argues that Plaintiffs' account of the events of June 13, 2022 is false, because the evidence indicates that Mr. Luevano-Vaca was not visited by a vigilante leader. *See* Opposition, ECF No. 190 at 9–10. Further, Fresh Harvest argues that Mr. Baltazar did not violate any ethical rules because the evidence indicates that he contacted Mr. Luevano-Vaca merely to offer him a job with Harvest Tek—which had nothing to do with this case and is therefore outside

4

the scope of the representation relevant under California Rule of Professional Responsibility 4.2. *See id.* at 10–11.

The Court agrees with Plaintiffs. The Court declines to determine whether the Harvest Tek "agent" was a vigilante leader, but regardless of the identity of the agent sent to Mr. Luevano-Vaca's house, the undisputed evidence indicates that an agent of a lawyer for a Fresh Harvest affiliate showed up at Mr. Luevano-Vaca's house uninvited and without advance notice. Further, Fresh Harvest's innocent explanation for the incident defies belief: it is implausible that Harvest Tek would have had a lawyer send an agent on a 3.5-hour flight to offer Mr. Luevano-Vaca a truck driver job, and the evidence suggests that Mr. Baltazar and Mr. Luevano-Vaca discussed the present lawsuit. *See, e.g.*, Morton Reply Decl., ECF No. 191-1, Ex. D at 1, 5. The Court finds that such *ex parte* communication between Fresh Harvest (and affiliates) and Plaintiffs is improper, so a protective order prohibiting such communication is appropriate. *See, e.g.*, Cal. R. Prof. Resp. 4.2; *Altamirano-Santiago v. Better Produce, Inc.*, No. 19-cv-3964 DDP (FFMx), 2020 WL 5412123, at *4 (C.D. Cal. Sep. 8, 2020).

Accordingly, the Court hereby GRANTS Plaintiffs' motion as to the relief sought regarding communications between Fresh Harvest and Plaintiffs. Any future communication with named Plaintiffs SHALL be through counsel.

**B.   Communications with Putative Class Members**

Plaintiffs further argue that the Court should limit communications between Fresh Harvest and putative class members regarding this litigation and settlement of their claims, because such communications violate the Court's December 1, 2021 order finding Mr. Luevano-Vaca's release of claims against Fresh Harvest void under 29 C.F.R. § 501.5. *See* Motion, ECF No. 178 at 7–8 ("Even attempting to obtain releases is unlawful."). Further, Plaintiffs argue that courts have "roundly condemned" solicitation of putative class members to prevent them from participating in litigation. *See id.* at 8. Plaintiffs argue that Fresh Harvest's conduct is particularly egregious given that the releases they have signed with putative class members have precluded the putative class members from "assist[ing] any other person in any action at law" regarding claims arising out of their employment. *See id.* at 9 (citing ECF Nos. 59, 144-4, 144-12, 144-17, 144-18). Plaintiffs

additionally argue that even if they cannot point to releases that Fresh Harvest has solicited putative class members to sign since the Court's December 1, 2021 order, Fresh Harvest also declines to swear that they have not sought such releases since that order was issued. *See* Reply, ECF No. 191 at 45. At the August 11, 2022 hearing, Plaintiffs clarified that any order should apply to both H-2A worker and domestic worker putative class members. Plaintiffs argued that domestic worker putative class members are in "corresponding employment" with H-2A workers under the H-2A regulations and therefore any release of domestic worker claims is governed by 29 C.F.R. § 501.5 just like any release of H-2A worker claims.

In response, Fresh Harvest argues that any order precluding Fresh Harvest from obtaining putative class member declarations would hamstring Fresh Harvest's efforts to oppose class certification. *See* Opposition, ECF No. 190 at 12. Further, Fresh Harvest argues that Plaintiffs exaggerate the impact of the Court's holding in its December 1, 2021 order, since that only pertained to the facts regarding Mr. Luevano-Vaca's release of claims. *See id.* at 12–13. Additionally, at the August 11, 2022 hearing, Fresh Harvest argued that any protective order should apply only to H-2A workers, since the Court's December 1, 2021 order was premised on the H-2A regulations.

The Court agrees with Plaintiffs in part. Based on the Court's December 1, 2021 order, Fresh Harvest and its agents have no reason to communicate with H-2A worker putative class members about releases or waivers of claims against Fresh Harvest. The Court's December 1, 2021 order held that any such release is void under applicable H-2A regulations as a matter of public policy. *See* Order, ECF No. 147. Accordingly, the Court has no trouble finding that such a restriction on Fresh Harvest's communications with putative class members is justified.

Fresh Harvest also seeks a protective order prohibiting Fresh Harvest and its agents from "communicat[ing] with putative class members about the subject matter of this litigation or the claims asserted therein." *See* Proposed Protective Order, ECF No. 191-2 at 2. The Court finds that such a limitation on communications between Fresh Harvest and H-2A worker putative class members is—in part—justified in the interest of protecting putative class members from undue solicitation. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010) ("Courts applying the *Gulf Oil* standard have found that *ex parte* communications soliciting opt-

6

outs, or even simply discouraging participation in a case, undermine the purposes of Rule 23 and require curative action by the court."); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C–12–0982 EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012). Fresh Harvest argues that such a limitation on communications with putative class members would hamper its efforts to oppose class certification. *See* Opposition, ECF No. 190 at 12. But a protective order can be tailored to to address Fresh Harvest's concerns. Accordingly, any limitation on Fresh Harvest's communications with H-2A putative class members does not limit Fresh Harvest's ability to communicate with H-2A putative class members to obtain affidavits or other evidence in connection with class certification. Further, any limitation on Fresh Harvest's communications with H-2A putative class members is with respect to the above-captioned case only—Fresh Harvest can continue to communicate with putative class members about current or future employment matters, for instance.

The Court disagrees with Plaintiffs as to domestic worker putative class members. The Court's December 1, 2021 order only pertained to releases of rights by H-2A workers. *See* Order, ECF No. 147. The Court has not ruled whether releases of rights by domestic workers in "corresponding employment" with H-2A workers are void under 29 C.F.R. § 501.5—or, for that matter, whether domestic worker putative class members are in "corresponding employment" with H-2A workers under the H-2A regulations. Accordingly, any protective order prohibiting Fresh Harvest's communications with domestic worker putative class members would be overbroad at this stage. *See Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal 2014) (considering "the precision with which the order is drawn" in determining whether a protective order limiting communication with putative class members is appropriate).

Based on the above reasoning, the Court GRANTS Plaintiffs' motion to the extent it seeks to prohibit communications between Fresh Harvest and H-2A worker putative class members regarding any settlement of their claims in this case. However, the Court DENIES Plaintiffs' motion to the extent it seeks to prohibit Fresh Harvest from communicating with H-2A worker putative class members to obtain affidavits or other evidence regarding class certification. Further, the Court DENIES Plaintiffs' motion to the extent it seeks to prohibit communications between Fresh Harvest and domestic worker putative class members.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for a protective order prohibiting *ex parte* communications between Fresh Harvest (and its agents, including affiliates) and Plaintiffs is GRANTED;

2. Plaintiffs' motion for a protective order prohibiting communications between Fresh Harvest (and its agents, including affiliates) and H-2A worker putative class members regarding settlement of putative class members' claims in this case is GRANTED, provided that any such protective order allows Fresh Harvest to communicate with H-2A worker putative class members to obtain affidavits or other evidence in connection with class certification, or to discuss current or future employment matters;

3. Plaintiffs' motion for a protective order prohibiting communications between Fresh Harvest and domestic worker putative class members is DENIED WITHOUT PREJUDICE to moving for such a protective order at some later date following a relevant Court ruling as to the validity of releases of domestic worker putative class members' claims; and

4. The Court directed the parties at the August 11, 2022 hearing to meet and confer regarding the contents of a protective order consistent with the Court's comments during the hearing and file a proposed order with the Court **on or before August 18, 2022** unless the parties stipulate to a continuance of that deadline. The Court awaits the parties' proposed order. The only objections to any proposed order that the Court will entertain will be as to whether the proposed order is consistent with this Order.

Dated: August 22, 2022

BETH LABSON FREEMAN
United States District Judge