1  Dawson Morton
   Cal. SBN 320811
2  Santos Gomez
   Cal. SBN 172741
3  LAW OFFICES OF SANTOS GOMEZ
   1003 Freedom Boulevard
4  Watsonville, CA 95076
   Ph: 831-228-1560
5  Fax: 831-228-1542
   dawson@lawofficesofsantosgomez.com
6  santos@lawofficesofsantosgomez.com

7  James M. Finberg (SBN 114850)
   Eve H. Cervantez (SBN 164709)
8  Connie K. Chan (SBN 284230)
   ALTSHULER BERZON LLP
9  177 Post Street, Suite 300
   San Francisco, CA 94108
10 Ph: (415) 421-7151
11 Fax: (415) 362-8064
   jfinberg@altshulerberzon.com
12 ecervantez@altshulerberzon.com
   cchan@altshulerberzon.com
13

14 ATTORNEYS FOR PLAINTIFFS AND THE CLASS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| RIGOBERTO SARMIENTO, GUSTAVO LUEVANO-VACA, and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FRESH HARVEST, INC., et al. <br><br> Defendants. | CIVIL ACT. NO.: 5:20-cv-7974-BLF <br><br> BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT <br><br> Date: October 26, 2023 <br> Time:  9:00 A.M. <br> Ctrm:  Courtroom 3, U.S. District Court, 280 South First St., 5th Floor, San Jose, CA |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

SUMMARY OF SETTLEMENT TERMS ..................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I. THE SETTLEMENT MERITS FINAL APPROVAL ............................................................ 2

    A. The Strength of Plaintiffs' Case ................................................................................. 4

    B. The Risk, Expense, Complexity and Likely Duration Of Further Litigation ............. 5

    C. The Risk of Maintaining Class Action Status ............................................................ 6

    D. The Amount Offered in Settlement ............................................................................ 7

    E. The Extent of Discovery Completed and The Stage Of The Proceedings ................. 8

    F. The Experience and Views of Counsel ...................................................................... 8

    G. Notice of the Settlement and Class Members' Response Thereto .............................. 9

    H. There Are No Indicia of Collusion ........................................................................... 11

II. THE AMOUNTS OF FEES, COSTS, AND ENCHANCEMENT ARE REASONABLE ........................................................................ 11

III. THE CY PRES DESIGNATION IS APPROPRIATE ......................................................... 13

IV. FINAL CERTIFICATION OF THE CLASS ....................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................................... 3, 7, 9

*Black v. T-Mobile USA, Inc.*,
  2019 U.S. Dist. LEXIS 123676 ............................................................................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................................ 3, 4, 11

*Camilo v. Ozuna*,
  2020 U.S. Dist. LEXIS 57435 (N.D. Cal. Apr. 1, 2020) ...................................................... 4, 7

*Chen v. Chase Bank USA, N.A.*,
  2020 U.S. Dist. LEXIS 110755 (N.D. Cal. June 23, 2020) ...................................................... 8

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................................... 3

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 3, 4

*Contreras v. Worldwide Flight Servs.*,
  2020 U.S. Dist. LEXIS 79037 (C.D. Cal. Apr. 1, 2020) .......................................................... 9

*Gomez-Gasca v. Future Ag Mgmt.*,
  2020 U.S. Dist. LEXIS 195663 (N.D. Cal. Oct. 20, 2020) ............................................... 10, 12

*In re Immune Response Securities Litigation*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................................. 8

*Littlejohn v. Copland*,
  2020 U.S. App. LEXIS 20531 (9th Cir. June 30, 2020) .......................................................... 3

*McDonald v. CP OpCo, LLC*,
  2019 U.S. Dist. LEXIS 80501 (N.D. Cal. May 13, 2019) ..................................................... 12

*Moreno v. Beacon Roofing Supply, Inc.*,
  2020 U.S. Dist. LEXIS 122642 (S.D. Cal. July 13, 2020) ...................................................... 7

*Nachshin v. AOL, Ltd. Liab. Co.*,
  663 F.3d 1034 (9th Cir. 2011) ............................................................................................... 13

*Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................6, 9

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................................8

*Ortiz v. Genco, Inc.*,
   2019 U.S. Dist. LEXIS 70625 (N.D. Cal. April 23, 2019) ......................................................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................................9, 12

*Roes v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ............................................................................4, 9, 11, 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................................13

*Tijero v. Aaron Bros.*,
   301 F.R.D. 314 (N.D. Cal. December 19, 2013) ..................................................................3

*Uschold v. NSMG Shared Servs., LLC*,
   2020 U.S. Dist. LEXIS 99258 (N.D. Cal. June 5, 2020) ....................................................7, 8

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..............................................................................................4

*Vasquez v. Coast Valley Roofing, Inc.*
   (E.D. Cal. 2010) 266 F.R.D. 482 ........................................................................................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*,
   895 F.3d 597 (9th Cir. 2018) ..............................................................................................4

*Wren v. RGIS Inventory Specialists*,
   2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) .......................................................9

**Other Authorities**

29 C.F.R. § 501.5 ........................................................................................................................6

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................9

Fed. R. Civ. P. 23(e) ....................................................................................................................3

Fed. R. Civ. P. 23(e)(2) ............................................................................................................3, 4

**INTRODUCTION**

On April 14, 2023, the Court granted Plaintiffs' motion for preliminary approval of the parties' class action settlement. Doc. 225.  Pursuant to the April 14, 2023 Order, Plaintiffs' Motion for Approval of Attorneys' Fees, Costs and Service Payments was filed on June 27, 2023. Doc. 228. The deadline to object to the Settlement and/or to Plaintiffs' Fee Motion or to exclude oneself was September 11, 2023, which was sixty days after mailing or transmission of the notice which occurred on July 12, 2023. Doc. 225 at 2; Bryn Bridley Decl. at ¶16 (attached).

Plaintiffs now move for final certification of the settlement class and final approval of the Settlement Agreement.  For the reasons set forth below, the Settlement Agreement is fair, adequate and reasonable, Plaintiffs should be awarded the full amounts of attorney's fees, costs and the service awards requested, and final approval should be granted.

**SUMMARY OF SETTLEMENT TERMS**

The settlement provides:

- A Settlement Class originally described as comprised of 198 persons that worked for Defendants as hourly commercial drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 pounds gross vehicle weight in California or Arizona at any time during the period of November 12, 2016 to December 10, 2022 (the "Class Period"). Doc. 219-2 at 4, 33, ¶¶ I(I), I(K), VII(20).

- Based on data from Defendants, the total number of Settlement Class Members is 194 employees after zero exclusions. Bridley Decl. at ¶ 5.

- Defendants will pay the Gross Settlement Amount of $1,656,724 on a non-reversionary basis. Doc. 219-2 at 6, ¶I.(T). This Gross amount combined with a credit for prior payments of $374,276 made to some class members forms a Base Settlement Amount of $2,031,000. *Id.* at ¶¶ I(R)-(S). Defendants Fresh Harvest and SMD Logistics will pay $1,206,724 and Defendants Fresh Foods and Rava Ranches will pay $450,000. Doc. 219-2 at 24.

- In addition, and separate from the Gross Settlement Amount, Defendants will pay the employer's share of payroll taxes on the portion of settlement benefits allocated to wages and for which payroll taxes are owed, and Defendants will pay $10,000 towards the cost of

settlement administration apart from, and in addition to, the Gross Settlement Amount. Doc. 219-2 at 24, 28.

- Plaintiffs' counsel has sought an award of attorney's fees of $497,017 (24.5% of the Base Settlement Amount), Doc. 228 at 7, reimbursement of litigation costs in the amount of $56,987.92, Doc. 231 at 2, and an enhancement award to Plaintiffs of $15,000 each, Doc. 228 at 13-15.

- After all Court approved deductions are made from the Gross Settlement Amount, the Net Settlement Amount of approximately $1,063,936.08 will be distributed to Class Members (plus Class Members will be entitled to retain the $374,276 which has already been paid to class members and will not be reclaimed), for a total of $1,438,212.08 directed to Class Members. Doc. 219-2 at 14, ¶ VI (3). Each Class Member who is not excluded from the Settlement will receive their pro rata share of the Net Settlement Amount based on a formula that includes the number of workweeks they performed work, whether they had an H-2A visa, and which defendant was listed as their paystub employer during those work weeks. *Id*. at 15-17 ¶¶ VI.4.(a.)(i)-(ix). Individuals employed as H-2A workers are receiving a higher weighted portion of the settlement funds because they received lower average hourly wages during the class period, while individuals employed at SMD Logistics are received a lower weighted portion because they received higher average hourly wages. *Id.* ¶¶ VI.4.(a)(v)-(vi).

- Members of the Settlement Class will release all claims that were or could have been asserted based on the facts alleged in the operative complaint. *Id.*at 12-13 ¶VI.2.(b).

- Ten thousand dollars are allocated to settle the PAGA claims, with $2,500 apportioned to PAGA Members and $7,500 paid to the State of California Labor and Workforce Development Agency (LWDA). *Id.*at 14 ¶VI.3.(e). The $7,500 PAGA payment to the LWDA will not come out of settlement payments allocated to settlement class members, but shall instead be paid from unclaimed settlement funds should settlement class members not be located. In the event the unclaimed funds are insufficient to pay $7,500 to the LWDA, Fresh Harvest will pay an additional amount to the LWDA, up to $7,500. *Id.*

- The total administration costs are $18,783; $10,000 was paid separately by Defendants, and

the remaining $8,783 will come from the Base Settlement Amount. Doc. 219-1 at ¶¶ 24-25; Bridley Decl. at ¶ 22.

## ARGUMENT

I.   THE SETTLEMENT MERITS FINAL APPROVAL

A class action may be settled "only with the court's approval," Fed. R. Civ. P. 23(e), but that review is done with "strong judicial policy that favors settlements[.]" *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Tijero v. Aaron Bros.*, 301 F.R.D. 314, 320 (N.D. Cal. December 19, 2013).

This Circuit, and the federal rules, require an assessment that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011 (requiring "a determination that the settlement taken as a whole is fair, reasonable, and adequate."). In making that assessment, courts in the Ninth Circuit "typically consider[] the following factors[:]" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015)

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel;… and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *Littlejohn v. Copland*, 2020 U.S. App. LEXIS 20531, at *4 (9th Cir. June 30, 2020) (affirming use of factors in assessing fairness as "appl[ying] the correct legal framework . . . in approving the Settlement.").[1]

The federal rules, amended in 2018, also now require a determination by the district court that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

---

[1] An additional factor "the presence of a government participant" is inapplicable here.

       the class is adequate, taking into account (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 n.11 (9th Cir. 2019) (noting in 23(e)(2) "Congress codified its own multifactor test"). "This list of factors is not intended to displace any factors currently considered by courts[.]" *Camilo v. Ozuna*, 2020 U.S. Dist. LEXIS 57435, at *13 (N.D. Cal. Apr. 1, 2020).

       Finally, the Ninth Circuit has also cautioned that courts must be wary of "explicit collusion" or "indicia of possible implicit collusion[.]" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. Thus, the Ninth Circuit asks that courts "employ[] extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification[.]" *SFBSC Mgmt., LLC*, 944 F.3d at 1049. Deciding whether a settlement is fair is ultimately "an amalgam of delicate balancing, gross approximations and rough justice[.]" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*, 895 F.3d 597, 611 (9th Cir. 2018) (citations omitted).  Here, analysis of the factors leads to the ready conclusion that the proposed Settlement is fair and reasonable.

### A. The Strength of Plaintiffs' Case

       Assessing the strength of a plaintiff's case involves weighing the merits against the settlement amount and potential recovery. *Van Bronkhorst v. Safeco Corp,* 529 F.2d 943, 950 (9th Cir. 1976); *see also, Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 488.  A district court need not, however, "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

       Here, Plaintiffs maintain that their principal claims that Defendants failed to pay lawful wage rates to truck drivers are strong and that Plaintiffs achieved a result commensurate with the

relative strength of those claims. According to the calculations initially prepared by the Settlement Administrator,[2] the highest estimated award amount to be paid to a Class Member is $28,631.39; the lowest payment amount is $200 for individuals who received significant out-of-court payments that exceeded their pro-rata share calculated by the Settlement Administrator; the average recovery per class member before fees and costs is approximately $10,470; the average payment amount per Class Member is $5,378, and, when prior payments are included, is $7,195. Bridley Decl., ¶ 19.[3]

Plaintiffs Rigoberto Sarmiento is estimated to receive $13,262 and Plaintiff Gustavo Luevano-Vaca is estimated to receive $8,561.87, comprised of $1,486 in new payments in addition to his prior out-of-court payments which totaled $7,075.80. Bridley Decl. at ¶ 20. Each amount is apart from any service award the Court may approve. The distribution amount for all class members is expected to rise as a result of Plaintiffs' litigation costs which are presently below the amounts used to prepare the distribution amounts; *see infra*, at section III.

Given the fact that the Class Members worked *on average 26 months*, an average recovery of approximately $10,470 (or $402 additional compensation per month worked) reflects a good result that warrants final approval. Bridley Decl. at ¶ 19.

**B.  The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Continued litigation of this case would have exposed Plaintiffs to substantial expense and risk. For one, Defendants had unlawfully obtained both releases and nonparticipation agreements from the majority of the class; additionally, Defendants had threatened to sue, and had sued, Plaintiff Luevano-Vaca who was one of the class members to have signed such an agreement. Doc.

---

[2] Using a 100% participation rate, each Class member's Individual Settlement Allocation was determined by using a pro-rata share of the Net Settlement Amount based on the weighted workweeks they worked during the Class Period. Bridley Decl., ¶ 19.

[3] For example, one such class member has a total of eight workweeks in the class period, from September 1, 2017 until October 18, 2017, but received $5,266 in out-of-court payments from Defendants. The class member receives only the minimum payment of $200 from this distribution in addition to keeping the prior out-of-court payments.

147. While the case was ongoing, Defendants had sought to resolve this case in Mexico, without involvement of U.S. courts and without regard to governing law that banned the exact conduct in which they were engaged.  *See* 29 C.F.R. § 501.5.  This settlement, under Court supervision, subject to American law, and which provides additional compensation to class members, provides a fair and adequate resolution and also keeps Defendants from re-collecting the prior out-of-court payments made.

In the absence of this class settlement, Plaintiffs also ran the risk of losing a contested motion for class certification or of the Defendants attempting to otherwise evade liability by keeping class members from participating in the case. Doc. 142 at ¶¶ 6-10. In the light of a possible loss of class certification, Plaintiffs would have either not have achieved anything for the nearly two hundred class members or there were possible litigation outcomes where class members, assuming they prevailed on a contested motion for class certification, would have recovered far less than what was achieved by the Settlement Agreement.  Plaintiffs also faced the prospect of summary judgment being filed by the Rava Defendants on the issue of their liability as joint employers. Continued litigation would surely have involved expensive and lengthy disputes even if Plaintiffs would have eventually prevailed.  This proposed Settlement reaches a resolution more quickly and with certainty.  The prospect of "lengthy and expensive litigation with uncertain results" supports settlement.  *See, Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### C. The Risk of Maintaining Class Action Status

While Defendants have not objected to class certification for the purposes of settlement, Defendants clearly would contest class certification were this case to return to litigation.  Moreover, even if Plaintiffs prevailed on an initial motion for class certification as Plaintiffs expected, Plaintiffs still faced the risk of litigating the validity of the class releases Defendants had obtained or of contesting the Rava Defendants' motion for summary judgment on employer status. Finally, even if Plaintiffs succeeded in certifying all class claims, invalidated the class members' releases, and defeated another attempt at summary judgment, it still was not certain that Plaintiffs would obtain results significantly better than the result offered through this negotiated resolution.

### D.     The Amount Offered in Settlement

"The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Moreno v. Beacon Roofing Supply, Inc.*, 2020 U.S. Dist. LEXIS 122642, *10-11 (S.D. Cal. July 13, 2020). As discussed above and in the motion for preliminary approval, the Settlement achieved by Plaintiffs "falls well within the range of reasonable outcomes." Doc. 219 at 24. The settlement provides 25% of the lost wages and statutory penalties at issue or as much as 34% when considering that the total number of class members is reduced from earlier calculations. Doc. 219-1 at ¶ 15. This amount significantly exceeds recoveries that have received court approval.  *See, e.g., Uschold v. NSMG Shared Servs., LLC*, 2020 U.S. Dist. LEXIS 99258, at *29 (N.D. Cal. June 5, 2020) (approving settlement where "the Net Settlement Amount reflects a 12% recovery of the high-end estimate of potential damages."); *Camilo*, 2020 U.S. Dist. LEXIS 57435, at *17 (approving settlement where the "Net Settlement Fund is a little less than half (i.e., 44%) of defendants' potential liability"); *Bellinghausen*, 306 F.R.D. at 256 (approving settlement in a wage and hour class action where the gross common fund amount represented between 11% and 27% of plaintiffs' potential recovery). The average class member worked 105 weeks, effectively providing an additional $68 of compensation for each week worked (or $80 per weighted work week). Bridley Decl. at ¶ 19; Doc. 219-1 at ¶ 16. In addition to the monetary relief, the Settlement precludes Defendants from seeking to reclaim funds already paid to class members in an attempted out-of-court resolution of these claims which provides class members a non-monetary benefit as it will aid class members in evading future conflict or legal uncertainty about those payments. Doc. 219 at 14. Plaintiffs' counsel reasonably concluded that a settlement providing class members such a recovery was in the class members' best interests.

Additionally, the amount offered in settlement is being fairly distributed among three different classes of workers.  Because all class members were paid, on average, less than the prevailing wage for truck driving and denied contractually promised overtime and legally required breaks and rest periods, all class members have damages. However, the domestic drivers employed on paystubs from Defendant SMD Logistics had the highest average wages, while those employed at Fresh Harvest or Fresh Foods on H-2A visas had the lowest average wages.  Doc. 219-1 at ¶ 17.

Domestic drivers at Defendant Fresh Foods had wages in between the two. In other words, H-2A drivers were underpaid more substantially each work week than domestic drivers. Accordingly, the settlement agreement weights payments by increasing the work weeks of H-2A drivers and underweighting the work weeks of SMD drivers. Doc. 219-2 at 16 ¶¶ VI.4.(a)(v)-(vi). This results in a more equitable distribution than if payments were even across drivers, based solely on workweeks, because the H-2A drivers had the most in lost wages (per hour or week) while the domestic drivers at SMD had the least. Doc. 219-1 at ¶ 17.

### E.     The Extent of Discovery Completed and The Stage of The Proceedings

The parties reached a Settlement in good faith after engaging in significant discovery, including numerous discovery disputes presented to the Court, the taking of numerous depositions, and after engaging in a day-long in-person mediation, and a follow-up remote mediation session both conducted by an experienced attorney mediator, and additional negotiations between counsel for Plaintiffs and Defendants. Doc. 219-1 at ¶¶ 9-11. Although the parties agreed to mediate before completing all possible formal discovery, a large portion of that discovery had already been completed. Moreover, in negotiating a class resolution, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The focus is whether the parties had sufficient information to evaluate the strength and weakness of their case. *In re Immune Response Securities Litigation,* 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). Here, there is no dispute that the parties' settlement negotiations were conducted at arm's length, in good faith, after sufficient discovery enabled the parties to intelligently assess the strengths and weaknesses of their case.

### F.     The Experience and Views of Counsel

The opinions of experienced class counsel are "a factor supporting the court's final approval of the agreement" and are entitled to "considerable weight." *Ontiveros v. Zamora,* 303 F.R.D. 356, 371 (E.D. Cal. 2014); *Chen v. Chase Bank USA, N.A.,* 2020 U.S. Dist. LEXIS 110755, at *20 (N.D. Cal. June 23, 2020) (noting counsel's "extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, [] supports final approval of the Settlement Agreement."); *Uschold*, 2020 U.S. Dist. LEXIS 99258, at *32 (same). Here, Plaintiffs' attorneys

have substantial experience litigating class actions in general and wage and hour class actions on behalf of agricultural workers in particular. Doc. 219-1 at ¶ 3; Doc. 228-1 at ¶¶ 5-6. Their opinion that the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members, weighs in favor of final approval.

### G.  Notice of the Settlement and Class Members' Response Thereto

The overwhelmingly positive reaction from the class also supports final approval. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (noting district court "ha[s] discretion to find a favorable reaction to the settlement" where few opted out); *Bellinghausen*, 306 F.R.D. at 258 (relying on "absence of a large number of objections to a proposed class action settlement" in finding "a strong presumption that the terms of the proposed class settlement action are favorable to the class members.") Here there were no objections to the settlement and no class members sought to exclude themselves from the settlement. Bridley Decl. at ¶¶ 15-16.  And, nearly all class members were noticed, with only 11 notices ultimately undeliverable; 94% of the class members were successfully noticed.  Bridley Decl. at ¶ 9. Accordingly, courts generally conclude that where "none of the Class Members who received the Class Notice objected to the Settlement … [this factor] weighs in favor of final approval." *Contreras v. Worldwide Flight Servs.*, 2020 U.S. Dist. LEXIS 79037, at *14 (C.D. Cal. Apr. 1, 2020); *see also Nat'l Rural Telecomms. Coop..*, 221 F.R.D. at 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement" indicates that "the terms of a proposed class settlement action are favorable to the class members."); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, at *33 (N.D. Cal. Apr. 1, 2011).

The federal rules require "the best notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B); *SFBSC Mgmt., LLC*, 944 F.3d at 1044 (requiring "best notice practicable").[4]

---

[4] The Ninth Circuit in *SFBSC Management* expected that additional notice beyond mail would be used where employees might be difficult to reach by mail.  "We find it particularly problematic that, despite concerns that former employees in particular might be difficult to reach by mail, the

Here, notice was distributed by mail, on a website, and electronically via WhatsApp, where possible, to Class Members. Bridley Decl. at ¶¶ 8,11-12. The mailed notice, with a website and toll-free number, Bridley Decl. at ¶¶ 12, 14, and supplemental electronic notice, Bridley Decl. at ¶ 11, was "the best notice practicable, which satisfied the requirements of law and due process." *Ortiz v. Genco, Inc.*, 2019 U.S. Dist. LEXIS 70625, *3 (N.D. Cal. April 23, 2019); *see also Gomez-Gasca v. Future Ag Mgmt.*, 2020 U.S. Dist. LEXIS 195663, at *9 (N.D. Cal. Oct. 20, 2020) (finding mailed notice, website, and some WhatsApp notice was "the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves").

There were substantial errors in the data sets provided by Defendant Fresh Harvest and those errors caused some delays in mailing notice as Plaintiffs' counsel requested corrected data. On July 12, 2023, the Notice was mailed to all 194 Class Members. Bridley Decl. ¶ 8. Notices that were returned as undeliverable were re-mailed when new addresses could be located. *Id.* at ¶ 9. In addition, on July 12, 2023, the Settlement Administrator sent a message in Spanish via WhatsApp to 192 Class Members for whom WhatsApp numbers were received from Defendants. *Id*. at ¶ 11. Of these, 119 Notices were successfully sent via WhatsApp. *Id*. As of September 10, 2023, 183 class members were successfully noticed either by mail or electronically, with only 11 class members who have not been reached. *Id.* at ¶ 9.  The Settlement Administrator had an additional 34 interactions with class members, including 13 emails, 12 phone calls, and 9 WhatsApp communications. *Id.* at ¶ 15.  Lastly, on July 10, 2023, the Settlement Administrator launched the settlement website www.acuerdochoferes.com, *Id*. at ¶¶ 12-13, and established a toll-free phone number, *Id.* at ¶ 14. The website and phone number have remained continuously operational since that date and continue to be accessible as of the date of this filing. *Id*. The URL and toll-free number were printed in the mailed Notice and referenced in the WhatsApp message. *Id*. at ¶¶ 12,14 The website includes, among other things, copies of the Notice in Spanish and English, as well as

---

settlement provided no other means of reaching former employees." *SFBSC Mgmt., LLC*, 944 F.3d at 1046.

settlement documents filed with the Court, Plaintiffs' fee petition, answers to frequently asked questions about the settlement, key settlement dates, and options on how to contact the Settlement Administrator and Class Counsel. *Id*. Additionally, class counsel has fielded telephone calls, emails and messages from class members. Morton Decl. at ¶ 4 (attached).

Class Members had until September 11, 2023 to request exclusion from the Settlement or object to the Settlement terms. Doc. 225 at ¶ 7 (60 days from notice transmission); Bridley Decl. at ¶¶ 8, 11, 16 (notice transmitted July 12, 2023). Information on how to exclude and object are included in the Notice and on the Settlement website. *Id.* Ex. A. As of the date of this submission, the Settlement Administrator has received no exclusion requests and no objections. *Id*. at ¶¶ 15-16.

Further, as the Settlement does not require Class Members to file claims to receive their share of settlement funds, all Class Members whom the Settlement Administrator can locate will be paid. *Id.* at ¶ 18. Even Class Members who were not originally noticed will be able to receive their payment if they contact Class Counsel or the Settlement Administrator before the deadline to redistribute remaining payments and/or issue the *cy pres* payment. Thus, if Class Members did not get notice but hear through word of mouth when their fellow drivers receive payments, they may also reach out to the Settlement Administrator and be paid.

### H. There Are No Indicia of Collusion

Courts consider three factors to assess whether collusion is at issue: (1) counsel receiving a disproportionate share of the settlement; (2) a 'clear sailing' arrangement; and (3) a reverter that returns unclaimed amounts to the defendant. *SFBSC Mgmt., LLC*, 944 F.3d at 1049. A district court must address indicators of collusion. *Id.* at 1049-50. The settlement does not contain a clear sailing arrangement, a reverter of funds to Defendants, nor a settlement amount grossly disproportionate to the amount of fees. *In re Bluetooth*, 654 F.3d at 947. Further the fees requested are within the range of the benchmark, well supported and reasonable. Doc. 228 at 9-12.

## II. THE AMOUNTS OF FEES, COSTS AND ENHANCEMENT ARE REASONABLE

In connection with the previously filed Fee Motion, Plaintiffs have explained why the requested amounts of attorneys' fees ($497,012) and updated costs ($56,987.92) are reasonable. Doc. 228 at 12-13. The fees are in line with those prevailing in the Bay Area legal market and the

hours expended were reasonably necessary. Doc. 228-1 at ¶¶ 19-20, 28-32. The costs are reasonable and of the type commonly awarded. Doc. 228-1 at 33-34; *see also* Doc. 228-2 at ¶ 13.

The enhancement award of $15,000 to each of the two named Plaintiffs is a reasonable incentive award. These awards are intended "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action[.]" *Rodriguez*, 563 F.3d at 958-59; *SFBSC Mgmt., LLC*, 944 F.3d at 1057. The Plaintiffs spent substantial time, between 60 and over 70 hours, assisting with the litigation of the case. Sarmiento Decl. [Doc. 228-3] at ¶ 7 (more than 60 hours); Luevano-Vaca Decl. [Doc. 228-4] at ¶ 7 (more than 70 hours). The $15,000 incentive award is not disproportionate to Plaintiffs' individual recoveries, nor to the total class settlement amount, and represents just under one and a half times the average gross class recovery of just over $10,470 and just under three times the average class net cash recovery. Bridley Decl. at ¶ 19. The incentive awards rightly compensate Plaintiffs for significant time, reputational risks, and personal experiences with Defendants' strong-arm tactics to attempt to evade this litigation through extra-judicial communications directly with the named Plaintiffs, Sarmiento Decl. at ¶ 5; Luevano-Vaca Decl. at ¶¶ 9-10. *See, e.g, Gomez-Gasca v. Future Ag Mgmt.*, 2020 U.S. Dist. LEXIS 195663, at *18-19 (N.D. Cal. Oct. 20, 2020) (finding $10,000 "service award payment is reasonable" in part because of "the risks plaintiff assumed, and the results he obtained for all class members"). Here that reputational risk was greater than most, and included visits from hired representatives of the Defendants, including a known vigilante, and fears that rumors will be spread about the plaintiffs to impede their future employment. Luevano-Vaca Decl. at ¶ 10.

A service payment that is one and a half times the average class recovery is in line with other decisions in this district even where there are not significant nonmonetary benefits. *Black v. T-Mobile USA, Inc.*, 2019 U.S. Dist. LEXIS 123676, at *21 (approving "a $10,000 service award" which was "approximately 3.2 times" average recovery); *McDonald v. CP OpCo, LLC*, 2019 U.S. Dist. LEXIS 80501, at *23-24 (N.D. Cal. May 13, 2019) (rejecting a service award of "7.5 times the recovery of an average class member" and awarding one of $10,000 or 5 times the average class recovery); *Gomez-Gasca*, 2020 U.S. Dist. LEXIS 195663, at *18-19 (approving $10,000 service

award or 4 times the average class recovery). Here, the service award is even more appropriate where Plaintiffs have obtained significant monetary payments for class members, some nearly twice the proposed service award, and obtained protections from the prior out-of-court payments being recouped by Defendants. Doc. 228 at 14.

With regard to administration of the Settlement, the Settlement Administrator's final charge for administering the settlement is $18,783. Bridley Decl. at ¶ 22. Ten thousand dollars of the administration expenses is being paid separately by Defendants. Doc. 219-2 at 15 ¶VI.3.(c).

## III.  THE *CY PRES* DESIGNATION IS APPROPRIATE

The Court has broad discretionary powers in selecting a *cy pres* recipient. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) But there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries[.]" *Nachshin v. AOL, Ltd. Liab. Co.*, 663 F.3d 1034, 1038 (9th Cir. 2011). Here, the proposed *cy pres* award recipient, the food bank for Monterey county, is related to the area of Plaintiffs' and class members' employment in this county.

## IV.  FINAL CERTIFICATION OF THE CLASS

The Court has preliminarily certified this case for settlement purposes. Doc. 225 at ¶ 2. The class to be finally certified consists of:

> persons that worked for Defendants as hourly commercial drivers, excluding bus drivers, excluding bus drivers, who operated over-the-road highway vehicles in excess of 26,000 pounds gross vehicle weight in California or Arizona at any time during the period of November 12, 2016 to December 10, 2022 as an H-2A worker or a domestic worker.

Doc. 225 at 2. The final class list consists of 194 truck drivers. Bridley Decl. at ¶ 5. The class is numerous, shares common questions of law and facts including that they were all employed under the same employment agreements using the same compensation system and subject to the same legal violations, Doc. 219-1 at ¶ 6, Plaintiffs are members of the class and have fairly and adequately represented the interests of the class, Sarmiento Decl. at ¶¶ 1-3; Luevano-Vaca Decl. at ¶¶ 4-6. Accordingly, the Court should issue final class certification.

//

## CONCLUSION

Plaintiffs respectfully request the Court grant final approval of the Settlement, retain jurisdiction to enforce the Settlement, direct payments as specified in the Settlement, approve Plaintiffs' service awards, approve payment to the Claims Administrator, and award Plaintiffs the full amount of costs and fees requested in Plaintiffs' Fee Motion.

Dated: September 14, 2023         LAW OFFICES OF SANTOS GOMEZ

By   /s/ *Dawson Morton*
     Dawson Morton
     Attorney for Plaintiff and the Settlement Class